The reason that we are here today is to ask the government to speak with one voice. On the one hand, we have a giant federal agency which is in the business of determining disability when claimants can no longer work. On the other hand, we have a giant federal agency that's in the business of determining disability when claimants can no longer work. One is the Veterans Administration, the other is Social Security. This Court has found that these two agencies have more in common than not. There are eight broad areas of similarity that the McCarty Court found. And for this reason, this Court in McCarty v. Messonnieri found that great weight must be afforded to the determinations of the VA by the Social Security ALJs. In this case the ALJs give appropriate weight to the VA findings. And I think you need to help us sort that out in terms of the actual findings made by the ALJ in this case and the ways in which he distinguished the VA findings. Well, that's exactly the issue, Judge O'Scanlan, and it's the crux of the case. Now, we have two reasons that were actually given by this ALJ in this case. And if we look to the Honorable Judge King's opinion, which is in Volume I of your excerpts, and it's on page 15 of the opinion in order, he also recognizes only two reasons given by the ALJ. Now, when you read the defendant's brief, he identifies three reasons. And what I argued in my reply brief was that the third reason is post hoc rationalization, and even Judge King did not reach it. So we can leave that reason for later. The two reasons that ALJ Hack did express were, first of all, that she was complaining that there was no employability unemployability assessment performed after they reached a determination that Mr. Ballantyne was 100 percent disabled. Well, Judge King explained that. Are you citing in the ALJ records? It's in the ALJ decision, and I'll give you that page, in Volume I of your excerpts. I have it. I just need to know where the page is that you're citing. Okay. It's at the top of page 7. I may be wrong. Let me give that to you in a minute, Your Honor. I'm sorry. I don't have that at my fingertips. But ---- You know, if you're going to rely on the ALJ's statements, it's useful to help us find it. It's a long opinion. She mentions that the reviewing officer based the determination primarily on Dr. Van And then she comes back and talks about it on page ER-32, where you're zeroing in on. Okay. I believe the ---- well, I'm sorry, Your Honor. I'm just not going to be able to put my finger on it at the moment. But returning to what Judge King said. Now, are these two reasons reasons to distinguish the VAA findings, or just two reasons in general? She's giving two reasons. She's not mentioning McCarty. So we don't know if ---- That's the case. That's the case that controls here. We don't know if ALJ HAP was aware of the holding in McCarty, that she had to provide specific, persuasive, valid reasons that are grounded in the evidence. That's the standard that McCarty stands for. Correct. Exactly. Her two reasons are, first of all, that no unemployability assessment was performed. And secondly, that somehow her evaluation of the evidence was more comprehensive than that of the VA doctors. Those are her two reasons. Well, she would seem to be focusing on von Maehl. She seemed to say that von Maehl was co-opted by the process. I've done a lot more analysis of von Maehl. I have a better handle on what she had to say. Actually, Judge Fischer, she comes to van Maehl in the paragraph. And if I could find that page, I would, I would ---- See, that's why it would be nice to know where you're coming from. I have read this, and I kind of like where you're coming from. Can your co-counsels throw you a lifeline on this or not? I can see it. It's at the top of the page on the right-hand side. I really want to refer you to Judge King's opinion, the district court opinion. He actually finds ALJ hack to be in error. Okay. Where are you on, Judge King? Right now, I'm at page 15 of the opinion in order, which is in volume 1. I've got the ---- Okay. At the top, near the top of the page, it's ---- well, actually, no. It's in the last paragraph. He finds ---- The last paragraph of 15? We're on page 15 of the opinion in order of the district court. Oh, that would be page 17 of the record then, page 15 of the opinion in order? At page 17, that's correct. All right. And whereabouts on that page? And we're at the last paragraph, and Judge King writes that ALJ hack incorrectly suggested that it was not a reflection on unemployability. He knocks her reason out of the box by saying that she's incorrect in saying that the VA determination was not an unemployability assessment because it was. When you find someone to be 100% disabled, you are finding that they are unable to work. So in and of itself, the 100% determination was an unemployability assessment, and therefore, it's moot. You don't need to then go ahead and perform another assessment. It's been done. So reason number two is gone. Judge King has disposed of it for us. And he's only found two reasons, and Judge Fisher, what you said about Van Mael comes into play here. That is not one of the two reasons that she gave for rejecting the VA. She did use it to reject the opinion of the screening doctor, and that's a separate issue.  Now, in this case, the VA did not perform a comprehensive evaluation of the evidence. And in his brief, the Commissioner just quotes that and doesn't offer any explanation. Now, incomprehensibly to me, at the bottom of page 15 in the footnote, Judge King agrees with the Commissioner. Both the Commissioner and I read the ALJ's reason to be that the ALJ did not evaluate the evidence, or that the VA did not evaluate the evidence in as comprehensive a fashion as did the ALJ. He's speaking to the quality of the review. I was speaking to the quantity of the review. All the evidence, the VA had the same evidence. They had medical record, and the reason they had the medical record was because they generated it. Mr. Valentine got all of his medical care from the VA, so of course they had the entire medical record. Secondly, Dr. Monkosh even expressly said that he had the employment records. He had all those performance reviews that are in the record. And they had the claimant's entire C file, and the C file is the VA's claim file. So maybe what they didn't have was all the stuff that Social Security generates, and there certainly is a lot of that, their paperwork for a file. But if you want to talk about a comprehensive review, they had the same evidence. Judge Fischer? I'm looking at ER 32, and she says, address not an unemployment assessment, the bottom of the first carryover paragraph, and was not based on a comprehensive evaluation. She didn't say review. Comprehensive evaluation of the evidence available to the undersigned. And then she starts talking about VanMale and Carter. Right. Earlier, earlier, just to fill it out so I know what's in the ALJ's opinion. She had earlier, as you noted, said the reviewing officer based the determination primarily on Dr. VanMale's opinions. Okay. So I'm reading those two statements together, that what she appeared to be referring to, you can dispute this if you want, but that she seemed to be saying that she had evaluated VanMale, who was the primary source for the VA, and she comes to a different conclusion. Now, why is that? Okay. Well, if you're on page 32, what I'm looking at is the first complete paragraph in the middle of the page, and she's moved on from the reasons she has given to reject the VA. She has one little thing. Counsel, how do you relate it? I mean, she says, that's why I think if you look at, that's what I'm trying to understand. She says that the reviewing officer based at the VA based the determination primarily on Dr. VanMale's opinions. Okay. Then she addresses the evaluation of the evidence and a comprehensive evaluation. So at a minimum, she must be talking about VanMale. Would you not agree with that? I'm sorry. I don't agree with that, Judge Fischer, because I don't think she's talking about Dr. VanMale in the same ideological paragraph. What was the evidence that she looked at that was different from the VA? That's my point. Okay, but she clearly looked at the evidence that was available, which is Dr. VanMale. Yeah, well, here's the important point, and I see my time is running out, and I do want to reserve a little, or actually a minute. Your time has expired. Yes, go ahead. Yeah, sorry. Let me just finish, then, this thought, if I may. Dr. VanMale's opinion was one of many that the VA had. They had Dr. Monkhorst, they had Dr. Storsbak, they had Dr. Carter, and they had the physical treating doctors, Dr. Sina and Dr. Gruenow. Dr. VanMale is one of many. So if she's objecting to- Let me just, I know you're out of time, and I know, and this isn't a brief, but this is the question I came in with, and I'd like to get a clear understanding of your view. If what she meant to say was that she had looked at VanMale, who was the primary source for the VA, and her reasons for rejecting VanMale were what she meant to be talking about, your position would be, even if that's true, there was lots of other information the VA had, and she was either incorrect, that VanMale was the primary, or even if VanMale was the primary for the VA, there's lots of other evidence that they had, and she hasn't addressed it. I think that's exactly right. Okay, thank you. I think that's right. Thank you. Thank you, Counsel. We'll hear from the Governor. Good morning, Your Honors. Thomas Elsberry for the Commissioner of Social Security. Elsberry. And perhaps I can direct your attention to where the other evidence is. First noting that the VA specifically noted that it was Dr. VanMale's opinion letter, disability opinion letter, that was the primary basis for their finding 100% disability. The evidence that was not before them, that was not listed in their decision, that was fully developed by the LJ, was Mr. Valentine's work history. It's in consistency with Dr. VanMale's chart notes and progress notes, wherein she was reporting inability to work during a period he was working. She opined that he had great difficulty meeting the functions of work when he was reporting improved abilities and he was getting stellar reviews from his supervisors. The fact that for the last two years of his employment he was planning for his retirement and when he ended his job on his planned retirement date, it was not because of his impairments, it was because he was choosing to retire from that field. His field, his supervisor, his boss offered him an accommodation, accounting for his chief complaint or alleged limitation, which was fatigue related to sleep deprivation, secondary to his PTSD. They offered him a split shift with naps in the middle or anything else he could, and they left the table open to anything else he might be interested in, but that was the specific accommodation offered. He declined it, said it was time for him to go. So that's a work history that is not before the VA. That is a work history that brings Dr. VanMale's disability opinion, which on its own is an issue reserved to the commissioner. The issues of limitations caused by impairments are properly the venue of the doctors. A conclusory opinion of he's disabled with no discussion of why or what the limitations are that cause him unable to do any work is not in the venue of a doctor's opinion of limitations. That falls into the venue of the commissioner making a disability opinion. The question I have is whether or not we can tease out of this opinion. Counsel raised the question as whether this administrative law judge, who did write a fairly thorough opinion, had in mind her obligation vis-a-vis rejecting a VA opinion because she seems to operate from a faulty premise to begin with, that it's not an unemployment decision, which is properly rejected. So now we're trying to figure out where in her opinion is she going through the specific and convincing rejection. She just throws in the one line and says, I've done a better job of evaluating it. How are we supposed to know what it is that she's basing it on? The one line is the conclusion. It's a very long paragraph detailing the reasons she's rejecting the VA determination. Which paragraph is that? That's the one that starts on the bottom of 31 and concludes mid-32, stating the VA decision review was not an employability assessment and was not based on a comprehensive evaluation of the evidence. Which, in addition to the work history, also includes the activities of daily living. Could you be specific? You say the conclusion is? You're probably referring to the last paragraph that begins on the bottom of page 31 and then ends up about the middle of page 32. Is that the one you're talking about? That's correct. But, okay, so I'm understanding. The conclusion, oh, I see. You're starting there and then coming out with a conclusion. All right. Exactly, because earlier in the decision, the ALJ notes, I mean, she speaks about the VA finding of disability, excuse me, in context of the VA physicians, which Mr. Valentine's counsel is correct, include Dr. Monkosh, Drs. Carter, Dr. Van Mill, and Dr. Storsbach. Dr. Storsbach concluded he was able to continue working, indicated there was moderate problems, and suggested some remedies or tools for managing his symptoms, which Mr. Valentine declined to utilize. In addition, Dr. Storsbach's opinion was rendered while Mr. Valentine was working. So was Dr. Van Mill's original disability opinion in 2002, her disability letter. Her GAF assignments. Dr. Carter's opinion, who also opined he was disabled, but based apparently primarily on Mr. Valentine's representation that he had to leave his job before they fired him. They were about to bring the axe down on him because of his performance problems related to his impairment. But that wasn't true. It's clearly not true when you look at his work history. He's getting rave reviews. He himself is telling Dr. Van Mill and others I'm doing much better. I'm getting along better. Things are going much smoother. I'm sorry. I want to make sure I understand what you're arguing. If we want to find the McClarty or McCarty analysis, you're saying we look at her conclusion at the bottom of the carryover paragraph that begins on 31, and that's her conclusion. And so to get the predicate for that, we look to that self-contained paragraph. Is that it? And if so, where's the work history? Could you flag the work history part of that? Sure. The work history is developed in detail. Now, where is it referred to in paragraph 31? I mean the paragraph that you're identifying. Well, I would say that that's the primary summary of the VA doctor's testimony, but he discusses the VA from pages of 24 to 27. There are three pages where all he's discussing is the evidence before the VA. Okay. We're teasing it out. My problem is that it's sure taking a lot of trouble to tease it out. And are these ALJs instructed on McCarty? I mean, is this ALJ who seems to be writing a fairly decent opinion? Is she stumbling into the McCarty, or is she doing it deliberately? In other words, does she have McCarty in mind? Is this her application of our ---- I don't know her knowledge of McCarty, but I do believe her decision fully complies with it, because I think she does give specific, valid ---- The reason I have some questions about that is I also have some question about her rejection of lay testimony of the wife. I mean, number one, she's just flat out wrong to discount family testimony. Family testimony is always accepted as for what it's worth, but of course they have a bias in it. I think that's just improper. And then she rejects her because she says, well, what she testifies about at home has no application in the workplace. Well, of course the wife doesn't know what the husband does at the workplace, but the rule is what you put that evidence in for is what he's unable to do at home. Does that support what he claims he's unable to do in the workplace? And she seems to have that one totally garbled. I would have preferred that she not make the reference to the familial relationship, but I believe she in fact gave mostly credited Mrs. Valentine's testimony. Yeah, but then she said it wasn't relevant because it didn't describe what he was doing at work. It didn't describe his functional limitations at work and the description at home were, A, inconsistent with his actual activities. Well, that may be true, but the first part doesn't make it. I mean, why would a spouse necessarily know what his or her spouse is doing at work? Exactly, and that's the point of the ALJ's conclusion. While it's credible regarding his activities at home, it doesn't really address his abilities or limitations at work, and in regard to his abilities at home, the ALJ specifically notes, it's inconsistent with their activities, the snow skiing, the exercising, all the other activities. That alone is sufficient to discredit, to the degree he discredits it, Mrs. Valentine's testimony. A review of Mrs. Valentine's testimony does not reveal any significant limitations strongly suggesting disability, and in fact I would argue that the ALJ's RFC accounts for the limitations that she spoke of, which primarily included concentration, fatigue, and issues of that sort, which were addressed in her RFC, where she limited them to... Well, but what she said, what the ALJ said, is that her testimony are not useful in the critical assessment. She has no knowledge of his functioning at work, and is not an uninterested party. Well, no knowledge of his functioning at work is not a valid reason, since what you said, you know, if it's inconsistent, that's one thing, but her having no knowledge of what he does at work is totally irrelevant. So when I see a statement like that, that sort of says she's not paying any attention to the testimony. So I don't have any... And then when she goes on to say she's not an uninterested party, I get the impression she just flat out didn't listen to what the wife said, and I don't have any confidence that she said, well, they're inconsistent based on that testimony. Okay. I hear you're concerned about the testimony and the ALJ has a consideration of it. I guess I would differ in ALJ's... ALJ has an interpretation that is reasonable and rational and legally sound, because under Gregor v. Barnhart, in fact, familial relationship is a factor to be considered. She does it in a limited sense here. The activities... Her knowledge of his activities at work is relevant. It's the core of the issue regarding Mr. Valentine's ability to perform work. So that's a relevant topic to mention. It's why it's not pertinent evidence regarding that performance ability. And then she talks about, in addition, her testimony regarding the activities at home are inconsistent with their actual activities. I'm sorry. Where did she say that? It's not in the paragraph I thought it was, so I'm sorry. I can't... I don't think she says it. I believe that I'm probably citing to the inference that her allegations are not credited for the same reasons as Mr. Valentine, which were those very reasons I just listed, that his activities were inconsistent with his alleged abilities. That's generous. Okay. Thank you. And I see I'm way out of time if there are no further questions. No questions, counsel. The case just argued will be submitted for decision, and the Court will adjourn. Thank you.
judges: Goodwin, O'scannlain, Fisher